**Affirmed and Opinion filed September 24, 2013.**



In The

# Fourteenth Court of Appeals

### NO. 14-12-00077-CR

**CLYDE JAMES FREEMAN, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 410th District Court**
**Montgomery County, Texas**
**Trial Court Cause No. 09-11-11188-CR**

## O P I N I O N

A jury convicted appellant of felony driving while intoxicated (DWI), and the trial court assessed punishment at forty years' confinement. Appellant challenges his conviction in five issues, contending that the trial court erred by (1) releasing a defense witness from his subpoena; (2) denying appellant's request for a jury instruction on misdemeanor DWI; (3) failing to properly charge the jury on prior DWI convictions with a limiting instruction; (4) improperly commenting

on appellant's guilt in the jury charge; and (5) denying appellant's motion to suppress the results of a breath test. We affirm.

## I.    BACKGROUND

Courtney Philpott testified that she was working at a diner in Magnolia on September 19, 2009, when appellant entered the diner and placed a to-go order. She testified that appellant was being loud and smelled of alcohol. He told her, "I've been drinking all day. I'm probably drunk." While appellant sat in his vehicle and waited for his order, Philpott saw him drinking from a glass alcohol bottle. She knew he was drunk. After appellant left, and with the encouragement of other customers in the diner, she called the police to report the possibly intoxicated driver.

Corporal Jose Lopez of the Magnolia Police Department testified that on September 19, 2009, he was in his patrol vehicle when he received a call over the radio of a person that was intoxicated at a diner. Around the time he heard the call on the radio, he observed appellant's car several vehicles in front of him swerve and have trouble maintaining a lane. Appellant was driving partially in the center turn lane that separated the northbound and southbound lanes of Magnolia Boulevard. When Lopez activated the lights and sirens on his patrol vehicle, appellant made a right turn without signaling, almost causing an accident with the vehicle behind him. Appellant turned into the parking lot of a convenience store, and he parked a little bit sideways, taking up two parking spaces.

By the time Lopez stopped his vehicle beside appellant's car, another officer had entered the convenience store to retrieve appellant. The officers brought appellant outside. Lopez noticed a very strong odor of alcohol emanating from appellant; appellant's speech was slurred; and he had significant trouble maintaining his balance. Lopez conducted an HGN test to check if appellant's

2

eyes would "track properly." Appellant's eyes did not track properly, which indicated to Lopez that appellant was possibly impaired. Thus, Lopez administered two standardized field sobriety tests—the "walk and turn" and "one-legged stand." On the first test, Lopez observed seven clues of intoxication; on the second, Lopez observed three. On each test, two positive clues indicate intoxication.

Appellant was arrested, and Lopez informed appellant of his *Miranda* rights. While inventorying the vehicle, the officers found a glass bottle containing a liquid that smelled like alcohol. Appellant said it was vodka.

Lopez asked appellant whether he would give a breath or blood sample, and appellant said, "Fuck you." Lopez understood that response to be a refusal to a breath test. Lopez said, "You know we're going to take blood from you," and appellant told him to take it. Lopez testified that he did not read to appellant the "DIC-24" statutory warnings at the scene,[1] but he did read the warnings after transporting appellant to jail. Lopez again asked appellant if he would take a breath test, and appellant consented. Glenn Merkork, a forensic scientist, testified that appellant blew 0.225 on the intoxilyzer, which was between two and three times the per se definition of intoxication of 0.08.

Mark Wright testified that he was a latent print examiner with the Montgomery County Sheriff's Office. He compared appellant's fingerprint with unknown fingerprints in State's Exhibit 7, which included two judgments of conviction for driving while intoxicated. He testified that appellant's known print matched the two ink prints in Exhibit 7.

---

[1] These warnings provide, among other things, some of the potential consequences of refusing or submitting to a breath or blood test. *See* Tex. Transp. Code Ann. § 724.015.

3

The jury found appellant guilty of felony driving while intoxicated, which required proof that appellant had been previously convicted twice of any offenses related to the operation of a motor vehicle while intoxicated. *See* Tex. Penal Code Ann. §§ 49.04; 49.09(b)(2). The court sentenced appellant to forty years' confinement, and this appeal followed.

## II. SIXTH AMENDMENT CLAIMS

In his first issue, appellant contends that the court violated appellant's Sixth Amendment rights to compulsory process, confrontation, and cross-examination when the court released a defense witness over objection. The State contends that the witness's testimony was inadmissible under Rule 608 of the Texas Rules of Evidence, and appellant replies that the evidence was admissible under Rule 613.

## A. Background

On the first day of witness testimony, Corporal Lopez testified in front of the jury about the facts of appellant's case until reaching the testimony concerning appellant's breath test. At that point, the trial court held a suppression hearing outside the jury's presence. During cross-examination in that hearing, Lopez responded "no" to whether he "ever had any problems with [his] own agency as far as being truthful with them." Appellant's counsel indicated he had a witness who would contradict Lopez's answer. Appellant then called Sergeant Greg Valdez, Lopez's superior, and asked whether there had been prior incidents "where you made determinations that [Lopez] was not truthful." Valdez testified there was "one incident that he was wrote up," where Valdez believed Lopez was untruthful to him.[2] But Valdez also testified that there was never any finding that Lopez lied;

---

[2] The trial court admitted Defense Exhibit 1 for purposes of the suppression hearing. The exhibit was Valdez's report of the incident, describing the infraction of "dishonest or untruthfulness." The incident concerned whether Lopez had received a request to help another officer look for some keys. It was not related to appellant's case.

4

the matter was neither referred for disciplinary action nor investigated; and it was dismissed.

At the end of the first day of trial, the court told Lopez and Valdez that they would be on call the following day, but Valdez told the court that he had nonrefundable airplane tickets to go on vacation that night. The court said it was inclined to release Valdez, and trial counsel said, "I would just have to object." The court said it did not anticipate Valdez's testimony about Lopez being admissible, stating that the incident was "far afield and not related to this offense." Nonetheless, the court suggested appellant could introduce the records of the incident even though they were hearsay, and the State said there was no problem with that. The court suggested further that another witness on the key incident could come in, or "we can read back his testimony." The court released Valdez, noting that "[i]f it becomes an issue, then the State can call you back."

The court also explained that if appellant wanted to attack Lopez's credibility with Valdez's testimony, the court would reverse its position and allow the State to elicit testimony concerning Lopez's prior arrest of appellant for DWI. Thus, during appellant's cross-examination of Lopez in front of the jury on the following day, appellant did not ask Lopez about the "untruthful" incident nor offer any evidence about that incident. On the third and final day of trial, after both sides had rested, appellant wanted to "make a record with a bill" concerning Valdez. Appellant contended that releasing Valdez violated the Compulsory Process Clause of the Sixth Amendment. Appellant did not mention the Confrontation Clause or Rule 613 of the Texas Rules of Evidence.

## B.      Preservation of Error

"Rule 33.1 of the Texas Rules of Appellate Procedure provides that an objection must be timely and sufficiently specific to make the trial court aware of

the complaint, unless the specific grounds were apparent from the context." *Berry v. State*, 233 S.W.3d 847, 857 (Tex. Crim. App. 2007); *see* Tex. R. App. P. 33.1. "This rule ensures that trial courts are provided an opportunity to correct their mistakes at the most convenient and appropriate time—when the mistakes are alleged to have been made." *Hull v. State*, 67 S.W.3d 215, 217 (Tex. Crim. App. 2002). A defendant must let the trial court know what he wants and why he thinks himself entitled to it. *See, e.g.*, *Lankston v. State*, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992).

At no time during trial did appellant mention Rule of Evidence 613 or the Confrontation Clause or any words that would apprise the trial court of those bases for appellant's objection. Those contentions are not apparent from the context. Thus, appellant's general objection and bill did not preserve error for these appellate complaints. *See Reyna v. State*, 168 S.W.3d 173, 179 (Tex. Crim. App. 2005) (objection that evidence should have been admitted for "credibility" did not preserve complaint based on the Confrontation Clause); *Dixon v. State*, 2 S.W.3d 263, 273 (Tex. Crim. App. 1998) (objection that "only 'final felony convictions may be used to impeach testimony'" did not preserve error under Rule of Evidence 613 concerning impeachment based on bias or motive); *Shedden v. State*, 268 S.W.3d 717, 735 (Tex. App.—Corpus Christi 2008, pet. ref'd) (motion to suppress urging a violation of the "right to confront the witnesses against them" did not preserve complaint based on Compulsory Process Clause).

Assuming without deciding that appellant's compulsory process complaint was apparent from the context at the time the court released Valdez,[3] we will address the merits of that complaint.

---

[3] We note that appellant did not mention the Compulsory Process Clause until after the close of evidence, and even then his bill concerned calling Valdez to testify about "departmental

### C.    Compulsory Process

"We review complaints concerning limitations on the right to compulsory process under an abuse-of-discretion standard." *Lawal v. State*, 368 S.W.3d 876, 886 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (citing *Drew v. State*, 743 S.W.2d 207, 225 n.11 (Tex. Crim. App. 1987)).  The Sixth Amendment right to compulsory process "'is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies.'" *Coleman v. State*, 966 S.W.2d 525, 527 (Tex. Crim. App. 1998) (quoting *Washington v. Texas*, 388 U.S. 14, 19 (1967)). "The Sixth Amendment does not guarantee, however, the right to secure the attendance and testimony of any and all witnesses; rather, it guarantees only compulsory process for obtaining witnesses whose testimony would be both material and favorable to the defense." *Id.* at 527–28.  The burden to show materiality is on the defendant. *Id.* at 528.

Under the Compulsory Process Clause, evidence is material "'only if there is a reasonable likelihood that the testimony could have affected the judgment of the trier of fact.'" *Harris v. Thompson*, 698 F.3d 627–28 (7th Cir. 2012) (quoting *Valenzuela-Vernal*, 458 U.S. 858, 874 (1982)); *see also Gov't of Virgin Islands v. Mills*, 956 F.2d 443, 446 (3d Cir. 1992).  Accordingly, a defendant does not have a right to compulsory process for testimony that is "'incompetent, privileged or otherwise inadmissible under standard rules of evidence.'" *United States v. Walker*, 410 F.3d 754, 758 (5th Cir. 2005) (quoting *Taylor v. Illinois*, 484 U.S. 400, 410–11 (1988)); *accord Clark v. State*, No. 04-10-00540-CR, 2012 WL 3025685, at *7–8 (Tex. App.—San Antonio July 25, 2012, no pet.) (mem. op., not

---

policies."    Further, appellant never offered any evidence before the jury about Valdez's "untruthful" finding, despite the trial court's invitation to do so.

designated for publication) (no violation of right to compulsory process because the evidence was inadmissible under the Texas Rules of Evidence); *Edwards v. State*, No. 05-91-01087-CR, 1993 WL 15491, at *6 (Tex. App.—Dallas Jan. 27, 1993, pet. ref'd) (not designated for publication) (no violation of right to compulsory process because the evidence was merely impeachment on a collateral matter and thus inadmissible under Rule 608 of the former Texas Rules of Criminal Evidence).

Appellant has failed to show that Sergeant Valdez's testimony was material as a matter of law. In particular, the trial court would have acted within its discretion to exclude Valdez's testimony under Rule 608 of the Texas Rules of Evidence. Rule 608(b) provides, "Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of crime as provided in Rule 609, may not be inquired into on cross-examination of the witness nor proved by extrinsic evidence." Tex. R. Evid. 608(b). Under this rule, a witness's character for truthfulness may not be attacked by offering extrinsic evidence concerning specific prior instances of untruthfulness. *Hammer v. State*, 296 S.W.3d 555, 563 (Tex. Crim. App. 2009). Evidence that Valdez had believed Lopez was untruthful during a prior, unrelated incident is exactly the type of evidence made inadmissible by Rule 608(b): it is extrinsic evidence concerning a specific prior instance of untruthfulness. Appellant has failed to establish a reasonable likelihood that the testimony could have affected the jury's verdict. *See United States v. Romero–Cruz*, 201 F.3d 374, 377–78 (5th Cir. 2000) (finding no compulsory process violation when the purported witness "would at most have impeached [another witness] on a collateral matter," and the defendant "failed to establish a reasonable likelihood that [the

purported witness's] testimony would have affected the judgment of the jury").[4] The trial court did not abuse its discretion in concluding that releasing Valdez did not violate appellant's right to compulsory process.

Appellant's first issue is overruled.

### III.   JURY CHARGE CLAIMS

In several issues, appellant contends the trial court erred by denying a requested lesser-included jury instruction, failing to instruct the jury on jurisdictional elements of DWI, failing to include a limiting instruction, and commenting on appellant's guilt.

### A.   Lesser-Included Instruction

In his second issue, appellant contends that the trial court erred by denying his request for a jury instruction on the lesser-included offense of misdemeanor DWI.

"The determination of whether a lesser-included-offense instruction requested by a defendant must be given requires a two-step analysis: (1) Is the requested charge for a lesser-included offense of the charged offense? (2) Is there trial evidence that supports giving the instruction to the jury?" *Rice v. State*, 333 S.W.3d 140, 144 (Tex. Crim. App. 2011). The State does not dispute appellant's contention under the first inquiry that misdemeanor DWI is a lesser-included offense of felony DWI. *See Guess v. State*, No. 12-08-00448-CR, 2010 WL 681345, at *4 (Tex. App.—Tyler Feb. 26, 2010, pet. ref'd) (mem. op., not designated for publication); *Carter v. State*, No. 14-08-00662-CR, 2009 WL

---

[4] *Cf. Whitmore v. State*, 570 S.W.2d 889, 896–98 (Tex. Crim. App. 1976) (the defendant's Sixth Amendment right to compulsory process was violated when the trial court denied a motion for new trial based on newly available testimony that was "admissible and not merely cumulative, corroborative, collateral, or impeaching; and [the] materiality was such as would probably bring about a different result on another trial").

9

2998534, at *3 (Tex. App.—Houston [14th Dist.] Aug. 11, 2009, pet. ref'd) (mem. op., not designated for publication).

Under the second inquiry, we must "determine if there is some evidence in the record which would permit a jury to rationally find that, if the defendant is guilty, he is guilty only of the lesser-included offense." *Rice*, 333 S.W.3d at 145. "'[T]here must be some evidence directly germane to the lesser-included offense for the finder of fact to consider before an instruction on a lesser-included offense is warranted.'" *Goad v. State*, 354 S.W.3d 443, 446 (Tex. Crim. App. 2011) (alteration in original) (quoting *Hampton v. State*, 109 S.W.3d 437, 441 (Tex. Crim. App. 2003)). "It is not enough that the jury may disbelieve crucial evidence pertaining to the greater offense." *Skinner v. State*, 956 S.W.2d 532, 543 (Tex. Crim. App. 1997). "The evidence must establish that the lesser-included offense is a valid, rational alternative to the charged offense." *Goad*, 354 S.W.3d at 446 (quoting *Rice*, 333 S.W.3d at 145).

Appellant contends the second step has been satisfied in this case because State's Exhibit 7 contained two prior DWI judgments from June 2000 and October 2001, and the testimony and evidence linked appellant to only the October judgment. Appellant notes that both judgments have thumbprints on them, but only the October judgment contains the handwritten initials of the State's fingerprint expert, Mark Wright. Appellant also quotes the following testimony from Wright:

> Q: Let me show you State's Exhibit No. 7. Can you have a look at State's Exhibit No. 7 and tell us whether or not you can identify it?
>
> A: Yes, sir. It is *one* ink fingerprint on the judgment date identified.[5]

---

[5] (emphasis added by appellant).

Based on this evidence, appellant contends the jury could have rationally concluded that appellant was guilty of only a misdemeanor DWI because the State failed to prove one of the prior convictions.

However, regardless of the fact that Wright's testimony above does not necessarily support appellant's position,[6] appellant ignores the remaining testimony from Wright, which clarifies that his fingerprint analysis linked appellant to both prior judgments:

> Q.    Did you have an opportunity to compare the *fingerprints* on State's Exhibit No. 7, the inked *fingerprints* on Exhibit No. 7 and compare it to the known prints on State's Exhibit No. 9?
>
> A.    Yes, I did.
>
> Q.    And what were the results of your findings when comparing the unknown *prints* on State's Exhibit No. 7 to the known prints on State's Exhibit No. 9?
>
> A.    That they were made by the same person, the defendant, Mr. Freeman.
>
> *          *          *
>
> Q.    And in your opinion, is the person depicted in State's Exhibit No. 7, Clyde James Freeman, the same person that you took the ink print or the marked print—the known print from today?
>
> A.    Yes.  Based on the two, the comparison of the *two ink prints* from that document and the known fingerprint card, it is the same person.[7]

Appellant did not cross-examine Wright on the issue, and there is no evidence in this record directly germane to the lesser-included offense of misdemeanor DWI. The trial court did not err by refusing to submit a lesser-included offense instruction.

---

[6] Each of the two judgments in Exhibit 7 contains "one ink fingerprint."

[7] (emphasis added).

Appellant's second issue is overruled.

## B.   Jurisdictional Elements of Prior DWI Convictions

In his third issue, appellant contends the trial court erred by not instructing the jury on all essential elements of the offense of felony DWI. In particular, appellant contends that the charge "should spell out the elements of the jurisdictional priors in their entirety" and "list the elements of the prior DWIs." Appellant contends that the jurisdictional elements "must be separately listed so there is no doubt the jury finds them to be true." Appellant cites no authority for any of these propositions, and we reject them.

"A jury charge must distinctly set forth the law applicable to the case and set out all of the essential elements of the offense." *Martin v. State*, 200 S.W.3d 635, 639 (Tex. Crim. App. 2006). This requirement includes jurisdictional elements, such as the two prior convictions in a felony DWI case. *See id.* A person commits the offense of DWI "if the person is intoxicated while operating a motor vehicle in a public place." Tex. Penal Code Ann. § 49.04(a). A DWI is a felony "if it is shown on the trial of the offense that the person has previously been convicted . . . two times of any other offense relating to the operating of a motor vehicle while intoxicated." *Id.* § 49.09(b).

The jury charge in this case correctly stated the law applicable to the case by requiring the jury to find beyond a reasonable doubt that appellant "was twice convicted of an offense related to the operating of a motor vehicle while intoxicated." The charge stated that the phrase "offenses relating to operating a motor vehicle while intoxicated" included DWI offenses. No greater specificity is required. "Nothing in the law requires that the jury be informed of the particulars of the prior convictions . . . in the jury charge itself." *Martin*, 200 S.W.3d at 640 (emphasis omitted) (holding that the jury charge need only "include some

12

reference to the jurisdictional element of two prior DWI convictions in a felony DWI trial"); *cf. Sifford v. State*, 511 S.W.2d 526, 528 (Tex. Crim. App. 1974) (jury charge correctly stated that "appellant was previously convicted on the charged date" without addressing whether the appellant was "'duly and legally' so convicted"). Accordingly, the trial court adequately charged the jury on the essential elements of felony DWI.

This part of appellant's third issue is overruled.

## C. Limiting Instruction Regarding Jurisdictional Elements

Also in his third issue, appellant contends the trial court erred by failing to include a limiting instruction regarding the prior DWI jurisdictional elements.[8]

When, as here, a defendant does not request a limiting instruction at the time evidence is admitted, the evidence is admitted for all purposes. *Hammock v. State*, 46 S.W.3d 889, 895 (Tex. Crim. App. 2001). A limiting instruction on the evidence never becomes "'law applicable to the case,' and the trial court [is] not required to include a limiting instruction in the charge to the jury." *Id.* Thus, under *Hammock*, appellant would not be entitled to an instruction in the jury charge because he did not request a limiting instruction at the time the evidence of his prior convictions was admitted. *See Ward v. State*, No. 01-02-00582-CR, 2003 WL 1563753, at *2 (Tex. App.—Houston [1st Dist.] Mar. 27, 2003, pet. ref'd) (mem. op., not designated for publication) (applying *Hammock* in a felony DWI case).

---

[8] Appellant suggests the limiting instruction should have informed the jury that it could not consider the evidence of appellant's having been two times previously convicted "in any manner proving or tending to prove that the defendant was intoxicated or operated a motor vehicle in a public place on ___ day of ___."

Appellant attempts to distinguish his case from *Hammock* because the evidence in his case is "much less striking and much more technical," and the evidence has "its greatest impact in the jury room" rather than at the time the evidence is offered. But *Hammock* was not decided on such concerns; *Hammock* presented a straightforward application of Texas Rule of Evidence 105(a) and Code of Criminal Procedure Article 36.14. *See Hammock*, 46 S.W.3d at 895. Accordingly, we conclude the trial court did not err by omitting from the charge a limiting instruction concerning appellant's prior DWI convictions.

Appellant's third issue is overruled.

## D.     Comment on Appellant's Guilt

In his fourth issue, appellant contends he was egregiously harmed by the inclusion of an instruction in the jury charge that commented on appellant's guilt. The State concedes error but argues appellant did not suffer egregious harm. The instruction stated as follows:

> You are instructed that if you find that there is evidence in this case in regard to the defendant's having participated in any crime or bad act other than the offense for which ***you have found him guilty***, you cannot consider such crime(s) or bad act(s) unless it has been shown beyond a reasonable doubt by evidence to have been committed by the defendant for which he could be held criminally responsible, regardless of whether he has been previously charged with or finally convicted of the crime(s) or act(s). You are further instructed such crime(s) or act(s) are not to be used in setting the punishment of the defendant, but rather to assist you in ***determining the proper punishment*** in this particular case alone.[9]

---

[9] (emphasis added). The Court of Criminal Appeals has suggested that an "obvious example" of error would be when a judge informs the jury that it would reach the punishment phase of the trial "because the only reasonable inference for the jury is that the defendant's guilt had been established in the judge's mind." *Brown v. State*, 122 S.W.3d 794, 798 & n.9 (Tex. Crim. App. 2003); *see also* Tex. Code Crim. Proc. Ann. art. 38.05 (trial judge shall not make any remark calculated to convey to the jury the judge's opinion of the case).

Appellant contends this instruction removed the State's burden of proving guilt beyond a reasonable doubt and singles out appellant's guilt. When viewed in light of the *Almanza* factors, however, we do not find egregious harm.

Under *Almanza v. State*, "unobjected-to jury charge error will not result in reversal of a conviction in the absence of 'egregious harm.'" *Allen v. State*, 253 S.W.3d 260, 264 (Tex. Crim. App. 2008) (citing *Almanza v. State*, 686 S.W.2d 157 (Tex. Crim. App. 1984)). To determine egregious harm, we much consider (1) the entire jury charge, (2) the state of the evidence, including the contested issues and the weight of the probative evidence, (3) the arguments of the parties, and (4) any other relevant information revealed by the record of the trial as a whole. *Id.* "Jury charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory." *Id.*

The jury charge included, among other things, an abstract section describing the crime, an application paragraph, and an instruction concerning the DIC-24 warnings informing the jury to disregard evidence derived from the breath test if appellant's consent was not freely and voluntarily obtained. The charge also included several paragraphs about the jury's role in determining guilt and the burden of proof:

> All persons are presumed to be innocent, and no person may be convicted of an offense unless each element of the offense is proved beyond a reasonable doubt. The fact that a person has been arrested, confined, or indicted for, or otherwise charged with an offense gives rise to no inference of guilt as his or her trial. The law does not require a Defendant to prove his or her innocence or produce any evidence at all. The presumption of innocence alone is sufficient to acquit the Defendant unless the jurors are satisfied beyond a reasonable doubt of the Defendant's guilt after careful and impartial consideration of all the evidence in this case.

The prosecution has the burden of proving the Defendant guilty and it must do so by proving each and every element of the offense charged beyond a reasonable doubt and, if it fails to do so, you must acquit the Defendant.

\* \* \*

You are the exclusive judges of the facts proved, of the credibility of the witnesses, and the weight to be given their testimony, but you must be governed by the law you shall receive in these written instruments.

\* \* \*

Your sole duty at this time is to determine the guilt or innocence of the Defendant under the foregoing instructions; restrict your deliberations solely to the issue of guilt or innocence of the Defendant.

Viewing the jury charge as a whole, this factor weighs against a finding of egregious harm. The burden of proof was clearly placed on the State to prove guilty beyond a reasonable doubt, and the final two paragraphs in particular informed the jury that it was deciding appellant's guilt and would be the exclusive judge of the facts. The passing reference in the erroneous instruction concerning appellant's guilt and punishment likely would not convey to the jurors that they should find appellant guilty. This conclusion is bolstered by considering the arguments of the parties.

By the parties' arguments, it was clear that the jury's role was to determine if the State had proven appellant's guilt beyond a reasonable doubt. Both the State and trial counsel informed the jury that the burden was on the State to exclude all reasonable doubt concerning appellant's guilt. Appellant's counsel reminded the jurors that they were the exclusive judges of credibility. And the arguments highlighted the primary contested issues in the case: (1) whether appellant's breath sample was freely and voluntarily obtained; and (2) whether Lopez was credible.

16

The error in the charge was not emphasized by either party. This factor weighs against a finding of egregious harm.

Further, the record contains ample evidence of appellant's guilt, irrespective of the results of the breath test.[10] Lopez detailed the results of the field sobriety tests. Philpott testified about appellant's admission, "I've been drinking all day. I'm probably drunk." She believed appellant was drunk. Wright confirmed by fingerprint analysis that appellant had two previous convictions for DWI. And when the breath test results are considered, the evidence of intoxication is overwhelming. The weight of the probative evidence weighs against a finding of egregious harm.

Finally, we note the absence of any indicator in this record that the jury was impacted by the erroneous charge. For example, although the jury submitted several questions to the trial court during deliberations, none of the questions concerned punishment or the erroneous portion of the court's charge.

Considering the entire record in light of the *Almanza* factors, we find no egregious harm. *See Olivas v. State*, 202 S.W.3d 137, 146–49 (Tex. Crim. App. 2006) (no egregious harm from omission of burden of proof instruction concerning deadly weapon finding because even though the issue was contested, the evidence was ample, and there was nothing in the record to suggest the jury ignored the plain statement of law from trial counsel's closing argument and failed to apply it correctly); *see also Jackson v. State*, 285 S.W.3d 181, 183–85 (Tex. App.—

---

[10] Perhaps the most disputed issue was whether Lopez read the DIC-24 warnings before requesting appellant's breath sample. The video recording at the scene showed Lopez asking appellant for "breath or blood" without reading the DIC-24 warnings, and appellate refused with profanity. Lopez acknowledged that his report incorrectly suggested appellant was read the DIC-24 warnings before being transported to jail. Lopez testified that he gave appellant the DIC-24 warnings at the jail without recording it, and the form did not bear appellant's signature. Appellant's counsel asked the jury to disbelieve Lopez's testimony and determine he was not credible.

Texarkana 2009, no pet.) (no egregious harm when jury instructions identified the punishment classification of the potential offenses in the guilt-innocence charge even though the information was irrelevant and the evidence was conflicting).

Appellant's fourth issue is overruled.

## IV. MOTION TO SUPPRESS

In his fifth issue, appellant contends the trial court abused its discretion when it denied his motion to suppress the breath test. Without citing authority, appellant contends that when a defendant refuses a breath test, an "officer should only be allowed to request again if [the defendant] initiates."

"A driver's consent to a blood or breath test must be free and voluntary, and it must not be the result of physical or psychological pressures brought to bear by law enforcement." *Fienen v. State*, 390 S.W.3d 328, 333 (Tex. Crim. App. 2012) (emphasis omitted). In making this determination, the trial court must consider the totality of the circumstances. *Id.* "[N]o one statement or action should automatically amount to coercion such that consent is involuntary—it must be considered in the totality." *Id.* We will uphold a trial court's ruling on the voluntariness of a breath test unless the ruling is clearly erroneous. *Id.* at 335. We view the evidence in the light most favorable to the trial court's ruling and review questions of law de novo. *See id.*

The totality of the evidence in this case does not indicate appellant's consent was involuntary, and we decline to adopt appellant's bright-line rule prohibiting an officer from making a second request for a breath specimen. In *Feinen* for example, the defendant refused to give a breath specimen *two* times before he ultimately consented. *Id.* at 330, 336. Like the officer in *Feinen*, Lopez did not provide to appellant any information proven to be untrue. *See id.* at 335–36. The

18

officer in *Feinen* read the warnings before making the first request, but that single distinction is not dispositive in a totality-of-the-circumstances analysis. Appellant cites no authority to suggest his consent was involuntary merely because he refused to give consent once before receiving the DIC-24 warnings. We conclude the trial court did not err by denying the motion to suppress.

Appellant's fifth issue is overruled.

## V.    CONCLUSION

Having overruled all of appellant's issues, we affirm the trial court's judgment.

/s/        Sharon McCally
Justice

Panel consists of Justices Brown, Christopher, and McCally.

Publish — Tex. R. App. P. 47.2(b).

19