ACCEPTED
14-14-00306-CR
FOURTEENTH COURT OF APPEALS
HOUSTON, TEXAS
4/24/2015 4:51:47 PM
CHRISTOPHER PRINE
CLERK

**Nos. 14-14-00306-CR, 14-14-00307-CR, 14-14-00308-CR, 14-14-00309-CR, & 14-14-00310-CR**

In the
Court of Appeals
For the
Fourteenth District of Texas
At Houston

FILED IN
14th COURT OF APPEALS
HOUSTON, TEXAS
4/24/2015 4:51:47 PM
CHRISTOPHER A. PRINE
Clerk

————————◆————————

**Nos. 1909495, 1909496, 1909497, 1909498, & 1909499**
In County Criminal Court at Law Number Six
Of Harris County, Texas

————————◆————————

**ERIC L. BAUMGART**
*Appellant*
V.
**THE STATE OF TEXAS**
*Appellee*

————————◆————————

STATE'S APPELLATE BRIEF

————————◆————————

**DEVON ANDERSON**
District Attorney
Harris County, Texas

**DAN MCCRORY**
Assistant District Attorney
Harris County, Texas
mccrory_daniel@dao.hctx.net

**HEYWARD CARTER**
**LAUREN BYRNE**
Assistant District Attorneys
Harris County, Texas

1201 Franklin, Suite 600
Houston, Texas 77002
Tel.: 713/755-5826
FAX No.: 713/755-5809

*Counsel for Appellee*

ORAL ARGUMENT WAIVED

# STATEMENT REGARDING ORAL ARGUMENT

Since this case has been scheduled for submission without oral argument, the State waives oral argument.

# **TABLE OF CONTENTS**

STATEMENT REGARDING ORAL ARGUMENT ........................................................... i

INDEX OF AUTHORITIES ............................................................................... iii

STATEMENT OF THE CASE ............................................................................. 1

STATEMENT OF FACTS ................................................................................. 1

SUMMARY OF THE ARGUMENTS ..................................................................... 7

REPLY TO POINTS OF ERROR ONE AND TWO ..................................................... 8

REPLY TO POINT OF ERROR THREE .................................................................. 12

REPLY TO POINT OF ERROR FOUR .................................................................. 16

CONCLUSION ............................................................................................ 25

CERTIFICATE OF SERVICE ............................................................................ 26

CERTIFICATE OF COMPLIANCE ...................................................................... 26

# INDEX OF AUTHORITIES

**CASES**

*Almanza v. State*,
   686 S.W.2d 157 (Tex. Crim. App. 1984) (opin. on reh'g) ........................................... 19

*Bragg v. State*,
   740 S.W.2d 574 (Tex. App.--Houston [1st Dist.] 1987, pet. ref'd) ............................. 16

*Freeman v. State*,
   413 S.W.3d 198 (Tex. App.--Houston [1st Dist.] 2013, pet. ref'd) ............................. 19

*Gear v. State*,
   340 S.W.3d 743 (Tex. Crim. App. 2011) ................................................................. 9

*Grice v. State*,
   162 S.W.3d 641 (Tex. App.--Houston [14th Dist.] 2005, pet. ref'd) ........................... 14

*Hafley v. State*,
   781 S.W.2d 642 (Tex. App.--Dallas 1989, no pet.) .................................................. 18

*Hicks v. State*,
   18 S.W.3d 743 (Tex. App.--San Antonio 2000, no pet.) ............................................ 15

*Jackson v. Virginia*,
   443 U.S. 307 (1979) ............................................................................................ 9

*Laster v. State*,
   275 S.W.3d 512 (Tex. Crim. App. 2009) ................................................................. 9

*Lawrence v. State*,
   240 S.W.3d 912 (Tex. Crim. App. 2007) ................................................................. 14

*Lopez v. State*,
   846 S.W.2d 90 (Tex. App.--Corpus Christi 1992, pet. ref'd) ..................................... 15

*McClain v. State*,
   No. 14-97-00355-CR, 1997 WL 312309 (Tex. App.--Houston
   [14th Dist.] June 12, 1997, pet. ref'd) (not designated for publication) ....................... 15

*Nava v. State*,
   415 S.W.3d 289 (Tex. Crim. App. 2013) ................................................................. 19

*Perry v. State*,
991 S.W.2d 50 (Tex. App.--Austin 1998, pet. ref'd) ............................................... 12

*Shaub v. State*,
99 S.W.3d 253 (Tex. App.--Fort Worth 2003, no pet.) ........................................... 11

*State v. Coson*,
912 S.W.2d 865 (Tex. App.--Beaumont 1995, no pet.) ............................................ 15

*State v. Gerstenkorn*,
239 S.W.3d 357 (Tex. App.--San Antonio 2007, no pet.) ......................................... 11

*Taylor v. State*,
332 S.W.3d 483 (Tex. Crim. App. 2011) .................................................................. 19

*Villarreal v. State*,
453 S.W.3d 429 (Tex. Crim. App. 2015) .................................................................. 20

*Wooten v. State*,
267 S.W.3d 289 (Tex. App.--Houston [14th Dist.] 2008, pet. ref'd) ......................... 14

**STATUTES**

TEX. OCC. CODE ANN. § 1702.001 (West 2012) ................................................................ 13

TEX. OCC. CODE ANN. § 1702.102 (West 2012) ....................................................... 2, 13, 15

TEX. OCC. CODE ANN. § 1702.108 (West 2012) ............................................................ 2, 13

TEX. OCC. CODE ANN. § 1702.321-1702.332 (West 2012 & Supp. 2014) ...................... 13

TEX. OCC. CODE ANN. § 1702.322 (West 2012) ....................................................... 2, 14, 20

TEX. OCC. CODE ANN. § 1702.388 (West 2012) ....................................................... 2, 13, 15

TEX. PEN. CODE ANN. § 1.07 (West Supp. 2014) ............................................................. 11

TEX. PEN. CODE ANN. § 2.02 (West 2011) ................................................................ 14, 16

TEX. PEN. CODE ANN. § 2.03 (West 2011) ....................................................................... 16

**OTHER AUTHORITIES**

29 U.S.C. § 206(a)(1)(C) ................................................................................................. 22

D. MARK ELLISTON, 2 TEXAS PRACTICE GUIDE:CRIMINAL PRACTICE AND PROCEDURE § 16:80 (2015)........................................................................................ 15

**RULES**

TEX. R. APP. P. 39.7...........................................................................................................i

**TO THE HONORABLE COURT OF APPEALS:**

## STATEMENT OF THE CASE

Appellant was charged by five indictments with the offense of violating the Private Security Act. (CR I 10; CR II 11; CR III 11; CR IV 10; CR V 10).[1] After a jury found appellant guilty of the five charged offenses, the judge assessed punishment at two years of community supervision for each offense. (CR I 499; CR II 517; CR III 513; CR IV 504; CR V 497).

## STATEMENT OF FACTS

Renearl Bowie is an assistant director assigned to the Regulatory Services Division of the Texas Department of Public Safety (DPS). (RR V 15-16). Director Bowie's division regulates the private security industry and oversees the licensing of entities involved in that industry. (RR V 16-17). The DPS is the sole licensing authority for the private security industry. (RR V 18).

Director Bowie explained that the Private Security Act (the Act), located in chapter 1702 of the Texas Occupations Code, governs and regulates the private security industry. (RR V 20). He further explained that the Act requires a security guard to be licensed. (RR V 21, 23-26). TEX. OCC. CODE ANN. § 1702.102(a)(1)

---

[1]    "CR I" refers to the clerk's record for cause number 1909495.
        "CR II" refers to the clerk's record for cause number 1909496.
        "CR III" refers to the clerk's record for cause number 1909497.
        "CR IV" refers to the clerk's record for cause number 1909498.

(West 2012) (requiring license for "guard company"); TEX. OCC. CODE ANN. § 1702.108(2) (West 2012) (defining "guard company" as a person who engages in the business of a guard on a contractual basis for another person to prevent, observe, or detect unauthorized activity on private property). A violation of this requirement constitutes a Class A misdemeanor. (RR V 21-22). TEX. OCC. CODE ANN. § 1702.388 (West 2012).

Director Bowie stated that the Act does provide some exceptions to the licensing requirement. (RR V 26). Namely, there is an exception for a full-time peace officer. (RR V 27). TEX. OCC. CODE ANN. § 1702.322(1) (West 2012). Director Bowie explained that the Act defines a full-time officer, in part, as one who: (1) works as a peace officer on the average of at least 32 hours a week; (2) is compensated at least at the minimum wage; and (3) is entitled to all employee benefits offered to a peace officer by his employing agency. (RR V 27-29, 34). TEX. OCC. CODE ANN. § 1702.322(1)(D) (West 2012). A peace officer who does not meet these requirements must obtain a license to work security. (RR V 34).

Director Bowie checked DPS records and determined that appellant did not have a license during the time period spanning June to December of 2012. (RR V 36-37). In other words, appellant did not have a license to operate as a security

---

"CR V" refers to the clerk's record for cause number 1909499.

guard on the five dates alleged in the indictments. (RR V 38; CR I 10; CR II 11; CR III 11; CR IV 10; CR V 10).

The Neuman offenses

Tammy Neuman works for a non-profit charitable organization that operates a bingo hall that brings in about $10,000 on a daily basis. (RR V 53-55, 62, 77). Given this amount of cash on hand, Neuman routinely hires uniformed police officers to serve as "security on the premises." (RR V 62-64).

Neuman personally knows appellant since he and her husband grew up together. (RR V 64-65). She hired appellant to work as a security guard at the bingo hall on occasion. (RR V 64-67). In 2012, appellant worked for her on June 23, July 2, July 7, and July 29. (RR V 74-75). Neuman thought appellant was a full-time police officer because he wore a uniform, carried a gun, drove a police car, and had a badge. (RR V 68-69). She also thought he worked for the Liberty County Sheriff's Department. (RR V 69). Appellant represented himself to her as a full-time peace officer. (RR V 69).

The Lopez offense

On November 17, 2012, Alejandro Lopez was the foreman of a construction crew that was repairing the San Jacinto Bridge on Highway 59. (RR V 148-150). He was employed by Main Line Industries, which is a subcontractor for the Texas Department of Transportation. (RR V 149).

3

Lopez recalled that the highway's two inside lanes were closed for the repairs, but the two outside lanes remained open. (RR V 151). He explained that it is common to have a police officer on the job site to conduct the lane closures and protect the construction crew from the public. (RR V 152). Since only the construction workers are authorized to access the closed lanes, the police officer keeps the public from entering this area. (RR V 154-155).

On November 17, 2012, Kirk Bonsal, a peace officer and investigator employed by the Harris County District Attorney's Office, received information that appellant was violating the Act at a particular location. (RR V 160, 167-168). Investigator Bonsal and several other officers located appellant at Lopez's construction site at the San Jacinto Bridge at about 8:30 a.m. (RR V 114-119, 169, 172). Appellant was sitting in his truck, which was parked in one of the closed traffic lanes, while the construction crew was repairing the road. (RR V 116-117, 120-121, 138, 175).

Appellant was wearing a uniform and a holstered gun, but no gun belt. (RR V 122, 172). His uniform bore a constable's patch associated with Precinct Four of the Liberty County Constable's Office. (RR V 176). Investigator Bonsal located a document titled "daily activity report" in appellant's truck. (RR V 179-181). This document reflects that appellant was affiliated with the Liberty County Constable's Office. (RR V 182). It also indicated that he had contracted to provide traffic

4

control and security for the work crew on that particular date, starting at 6:00 a.m. (RR V 182-183). Investigator Bonsal also found an identification card in appellant's wallet that identified him as a reserve police officer, with an expiration date of December 31, 2012. (RR V 188).

To establish that appellant was not a full-time peace officer (meaning he was required to have a security license), the State presented the testimony of Kimberly Harris, the County Treasurer for Liberty County. (RR V 81-82). Her office operates the payroll for the employees of Liberty County, including the constables' precincts within Liberty County. (RR V 83-84, 86). Her office also serves as the human resource office and, as such, it maintains files for all county employees, including payroll records, retirement records, and worker's compensation records. (RR V 89). "[A]nything to do with an employee's record, it comes through [her] office." (RR V 89). Furthermore, all county employees are eligible for health insurance and retirement benefits. (RR V 88).

Harris searched her office's records for paperwork associated with appellant from 2008 through 2013. (RR V 93-94). No paychecks were issued to appellant and there were no payroll records indicating that appellant received any compensation from the county. (RR V 94). There was no record of any time sheets submitted by appellant. (RR V 95). There was no record of any tax forms, such as a W-2, for appellant. (RR V 96). There were no vehicle compensation records for

appellant. (RR V 96-97). There was no record of any county benefits being paid to appellant. (RR V 97). As such, Harris determined appellant was never a paid employee of Liberty County from 2008 through 2013. (RR V 97). In fact, to her knowledge, appellant had never been an employee of Liberty County. (RR V 108).

In an effort to show that he was a full-time peace officer at the time of the offenses (which would mean he did not need a license to work as a security guard), appellant presented the testimony of Chad Pafford. Pafford was the elected Constable in Liberty County from 2009 to 2013. (RR VI 75). He hired appellant as a reserve officer in 2009. (RR VI 75, 83-84). In 2011, Pafford "changed [appellant] over to full time." (RR VI 79, 85). There were no funds in Pafford's budget to pay appellant any money, so he compensated appellant by providing him the use of a "take-home car" and the use of county equipment. (RR VI 79, 101). The car was apparently a 2000 Ford Crown Victoria with about 260,000 miles. (RR VI 109).

Regarding the three criteria for being a full-time officer, Pafford first claimed that appellant worked for him at least 32 hours a week. (RR VI 89). Pafford admitted, however, that he had no paperwork documenting his claim that appellant worked 32 hours per week. (RR VI 105). He explained that appellant worked his 32 hours per week on the honor system. (RR VI 105).

Second, Pafford testified that he believed appellant earned minimum wage while working for him because he considered the value of the use of the take-home car and the county equipment to exceed minimum wage. (RR VI 108-110). However, despite considering appellant's use of county property to constitute compensation in excess of minimum wage, Pafford did not report this supposed compensation to the Liberty County tax Assessor's Office, the IRS, or any other taxing authority. (RR VI 122-123).

Third, Pafford testified that when appellant became a full-time employee, he did not get health care or a pension plan. (RR VI 103). Pafford did not know if appellant was entitled to all benefits offered by the county. (RR VI 110). Later, Pafford testified that appellant received Workmen's Compensation benefits and waived all other benefits. (RR VI 117).

## SUMMARY OF THE ARGUMENTS

Points one and two: Appellant's two sufficiency challenges are meritless. First, appellant complains the evidence fails to show that he contracted with Lopez. The indictment, however, does not allege that appellant contracted *with* appellant; rather, it alleges appellant acted as a guard on a contractual basis *for* Lopez. Absent an allegation that appellant contracted with appellant, the State had no burden to prove such an allegation.

Second, appellant claims the evidence fails to show that the area he was guarding was "private property." However, since the public did not have access to the property, it was private property.

Point three: The State was not required to negate the subchapter N exceptions in the indictment because these exceptions are located in statutes separate from the statutes that provide the penal offense.

Point four: Appellant's fourth point of error is premised on the erroneous identification of the "law enforcement personnel" statute as a defense. Since it is not a defense, appellant's arguments are meritless. Furthermore, assuming any error exists in the jury charge, appellant suffered no egregious harm.

## REPLY TO POINTS OF ERROR ONE AND TWO

In two points of error, appellant contends the evidence is insufficient to support his conviction in cause number 1909495. The indictment in that case alleges that appellant: "did then and there unlawfully, intentionally and knowingly act as a guard company, by engaging in the business of a guard on a contractual basis for another person, namely ALEJANDRO LOPEZ, to prevent, observe, or detect unauthorized activity on private property, without holding a license as a security services contractor." (CR I 10).

Appellant's challenge to the sufficiency of the evidence is two-fold. First, he claims there is no evidence that he contracted with Alejandro Lopez.

(appellant's brief, pp. 11-12). Second, he argues the evidence fails to support the allegation of "private property." (appellant's brief, p. 12).

Sufficiency-of-the-evidence standard

In determining whether the evidence is sufficient to support a conviction, a reviewing court must consider all the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, any rational factfinder could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *Gear v. State*, 340 S.W.3d 743, 746 (Tex. Crim. App. 2011). This standard gives full play to the responsibility of the factfinder to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Gear*, 340 S.W.3d at 746 (quoting *Jackson*, 443 U.S. at 319). This standard applies equally to circumstantial and direct evidence. *Laster v. State*, 275 S.W.3d 512, 517-18 (Tex. Crim. App. 2009).

Contractual basis

As mentioned, appellant first claims the evidence is insufficient to show that he "contracted with Alejandro Lopez." (appellant's brief, p. 12). In support of this contention, appellant notes that Lopez testified that he did not hire appellant to provide security for the construction crew. (RR V 156). Lopez explained that a company other than his hires police officers for security. (RR V 156).

9

Appellant's contention is meritless because it misinterprets the allegations in the charging instrument. The indictment does not allege that appellant contracted *with* Lopez. Rather, it alleges that appellant engaged in the business of a guard on a contractual basis *for* Lopez. (CR I 10). Based on this language, the State was required to show appellant was providing guard services on a contractual basis, but there was no need to establish that Lopez himself was a party to the contract. As worded, any person could have contracted with appellant for guard services for Lopez. In short, the indictment alleges appellant contracted *for*, not *with*, Lopez. Since appellant complains of the State's failure to prove a fact not alleged in the indictment, his claim is meritless.

Furthermore, appellant does not contend that the evidence fails to show that he engaged "in the business of a guard on a contractual basis *for*" Lopez. (CR I 10) (italics added). In any event, the evidence does show that appellant contracted to provide security for Lopez and his construction crew. (RR V 152, 178-183; RR IX – SX 27, 36).

Private property

Appellant also claims the evidence is insufficient to establish that the property upon which he was guarding against unauthorized activity was "private property" as alleged in the indictment. (CR I 10). Appellant maintains that the

10

portion of the highway on which he was providing guard services was public property.

The term "private property" does not appear to be statutorily defined. However, the term "public place" is defined in the Texas Penal Code. By process of elimination, therefore, whether an area is private property may be determined by examining whether it falls outside the definition of a public place.

The penal code defines a public place as follows:

> "Public place" means any place to which the public or a substantial group of the public has access and includes, but is not limited to, streets, highways, and the common areas of schools, hospitals, apartment houses, office buildings, transport facilities, and shops.

TEX. PEN. CODE ANN. § 1.07(40) (West Supp. 2014). In determining the public/private nature of a location, the relevant inquiry is whether the public has access to the place. *State v. Gerstenkorn*, 239 S.W.3d 357, 359 (Tex. App.--San Antonio 2007, no pet.); *Shaub v. State*, 99 S.W.3d 253, 256 (Tex. App.--Fort Worth 2003, no pet.). Therefore, even though a "highway" is listed in the statute as a public place, the statute and the interpretative caselaw identify public access as a determinative feature of a public place. *Id.*

At the time of his commission of the offense, appellant was located on the inside lane of US 59. (RR V 116). He was seated in this truck, which was parked in a closed lane of the highway. (RR V 117-122). The lane was marked off with

11

barrels and the construction crew was repairing the road within the closed-off area. (RR V 129). Four different witnesses testified that the public did not have access to this blocked-off area of the road and some of them also confirmed that it was appellant's job to prevent the public's access to the area. (RR V 129, 154-155, 174, 211-13).

Since the area in question was cordoned-off with barrels and a security guard was present for purposes of keeping the public out of the area, the section of the roadway on which appellant was present was not accessible to the public. Under these particular circumstances, the area was private, not public. *Compare Perry v. State*, 991 S.W.2d 50, 51-52 (Tex. App.--Austin 1998, pet. ref'd) (the fact that a park was closed by virtue of its hours of operation did not render it nonpublic because there were no gates or other barriers preventing the public from entering the park; the park was accessible to the public thereby making it a public place). Accordingly, the evidence is sufficient to support appellant's conviction in cause number 1909495.

Points of error one and two are meritless and should be overruled.

## REPLY TO POINT OF ERROR THREE

In his third point of error, appellant contends the trial judge erred in denying his motion to quash the indictments. (CR I 233; RR II 14-33). Appellant maintains

the indictments were defective because they did not negate the exceptions applicable to the charged offense.

Relevant chapter 1702 provisions

Chapter 1702 of the Texas Occupations Code is known as the Private Security Act. TEX. OCC. CODE ANN. § 1702.001 (West 2012). This Act requires a security guard to be licensed. TEX. OCC. CODE ANN. § 1702.102(a)(1) (West 2012) (requiring license for "guard company"); TEX. OCC. CODE ANN. § 1702.108(2) (West 2012) (defining "guard company" as a person who engages in the business of a guard on a contractual basis for another person to prevent, observe, or detect unauthorized activity on private property). A person commits an offense if he violates this requirement. TEX. OCC. CODE ANN. § 1702.388(a) (West 2012). Appellant was charged with the commission of this offense by acting as a guard without a license. (CR I 10; CR II 11; CR III 11; CR IV 10; CR V 10).

However, Subchapter N of chapter 1702 is titled "EXCEPTIONS." This subchapter contains 12 statutes which, collectively, provide a list of about 41 categories of individuals to whom chapter 1702 "does not apply." TEX. OCC. CODE ANN. § 1702.321-1702.332 (West 2012 & Supp. 2014). At trial, appellant unsuccessfully attempted to demonstrate that he fell into one of these categories of people who do not require a license to serve as a security guard. Namely, appellant

13

claimed he had full-time employment as a peace officer. TEX. OCC. CODE ANN. § 1702.322(1) (West 2012).

Relevant penal code provision

Section 2.02 of the Texas Penal Code is titled "Exception" and provides:

(a) An exception to an offense in this code is so labeled by the phrase: "It is an exception to the application of . . . ."

(b) The prosecuting attorney *must negate the existence of an exception in the accusation charging commission of the offense* and prove beyond a reasonable doubt that the defendant or defendant's conduct does not fall within the exception.

(c) This section does not affect exceptions applicable to offenses enacted prior to the effective date of this code.

TEX. PEN. CODE ANN. § 2.02 (West 2011) (italics added).

Standard of review

A trial judge's ruling on a motion to quash an indictment is reviewed for an abuse of discretion. *Wooten v. State*, 267 S.W.3d 289, 309 (Tex. App.--Houston [14th Dist.] 2008, pet. ref'd); *Grice v. State*, 162 S.W.3d 641, 645 (Tex. App.--Houston [14th Dist.] 2005, pet. ref'd). The reviewing court applies a *de novo* standard of review. *Lawrence v. State*, 240 S.W.3d 912, 915 (Tex. Crim. App. 2007).

14

Argument and analysis

Appellant argues that his five indictments are defective because they fail to negate the 41 exceptions contained in subchapter N. The general rule is that where a penal statute embraces an exception which is part of the statute itself, the State must negate the exception in the indictment. *Lopez v. State*, 846 S.W.2d 90, 93 (Tex. App.--Corpus Christi 1992, pet. ref'd). However, when an exception is in a separate section from the provision that states the offense, the exception need not be negated in the indictment. *Hicks v. State*, 18 S.W.3d 743, 744 (Tex. App.--San Antonio 2000, no pet.); *State v. Coson*, 912 S.W.2d 865, 868 (Tex. App.--Beaumont 1995, no pet.); *McClain v. State*, No. 14-97-00355-CR, 1997 WL 312309, at * 1 (Tex. App.--Houston [14th Dist.] June 12, 1997, pet. ref'd) (not designated for publication); D. MARK ELLISTON, 2 TEXAS PRACTICE GUIDE:CRIMINAL PRACTICE AND PROCEDURE § 16:80 (2015).

The offense with which appellant was charged is found in sections 1702.102 and 1702.388. TEX. OCC. CODE ANN. §§ 1702.102, 1702.388 (West 2012). The exceptions are found elsewhere, in sections 1702.321 through 1702.332. TEX. OCC. CODE ANN. § 1702.321-1702.332 (West 2012 & Supp. 2014). Since the exceptions are listed in sections separate from the statute that provides the offense, the State was not required to negate the exceptions in the indictment. *Hicks*, 18 S.W.3d at 744. Furthermore, it would be unreasonable to expect an indictment to

15

include negations of the 41exceptions listed in subchapter N. *Bragg v. State*, 740 S.W.2d 574, 576 (Tex. App.--Houston [1st Dist.] 1987, pet. ref'd) ("it is unreasonable to expect an indictment to include negations of 18 situations in which the offense does not apply").

Accordingly, the trial judge did not err in denying appellant's motion to quash the indictment. Point of error three is meritless and should be overruled.

## REPLY TO POINT OF ERROR FOUR

In his fourth point of error, appellant contends that *if* this Court determines that the "law enforcement personnel" exception in section 1702.322(a) is actually a defense, rather than an exception, then the trial judge erred by failing to apply this law to the facts of the case in the application paragraph and by failing to instruct the jury that a reasonable doubt on the defense requires an acquittal. To the extent that this point of error is predicated on a finding that section 1702.322 constitutes a defense, it is meritless because the statute is clearly housed among a list of exceptions as evidenced by its inclusion in subchapter N, which is titled "EXCEPTIONS." And an exception is different from a defense. *See and compare* TEX. PEN. CODE ANN. § 2.02 (West 2011); TEX. PEN. CODE ANN. § 2.03 (West 2011). Since appellant's point of error is premised on an inaccurate characterization of section 1702.322 as a defense, it is meritless and should be overruled.

However, even if the "law enforcement personnel" issue in section 1702.322(1) were a defense, appellant's complaint about the jury charge would remain meritless. The abstract portion of the jury charge defines the charged offense as follows:

> It is unlawful for any person to engage in the business of, or to perform any service as a guard company, or to offer his services in such capacities or engage in any business or business activity required to be licensed by the Texas Private Security Act, unless the person holds a license as a security services contractor.

(CR I 491).[2] The abstract portion of the charge also provides a description of section 1702.322's law enforcement personnel provision:

> It is not a violation of the Private Security Act for a person who has full-time employment as a peace officer, to receive compensation for private employment on an individual or independent contractor basis as a guard, if the officer:
>    (A) is employed in an employee-employer relationship or is employed on an individual contractual basis;
>    (B) is not in the employ of another peace officer;
>    (C) is not a reserve officer; and
>    (D) works as a peace officer on average at least 32 hours a week, is compensated by the state or political subdivision of the state at the rate of minimum wage or higher, and is entitled to all employee benefits offered to a peace officer by the state or political subdivision.

(CR I 491).

---

[2] Other than variations in offense dates and the complainants' names, the language in the jury charge is the same for each cause number. (CR I 491; CR II 511; CR III 507; CR IV 498).

Following the abstract section of the jury charge, the application paragraph states:

> Now, therefore, if you believe from the evidence beyond a reasonable doubt that…the defendant, ERIC BAUMGART, did then and there unlawfully, intentionally, or knowingly act as a guard company by engaging in the business of a guard on a contractual basis for another person…to prevent observe or detect unauthorized activity on private property, without holding a license as a security services contractor, then you shall find the defendant guilty.

(CR I 493). The charge also instructs the jurors that:

> The burden of proof in all criminal cases rests upon the State throughout the trial and never shifts to the defendant.
>
> . . .
>
> The prosecution has the burden of proving the defendant guilty, and it must do so by proving each and every element of the offense charged beyond a reasonable doubt, and if it fails to do so, you must acquit the defendant.

(CR I 494).

Appellant contends that the application paragraph is deficient because it fails to apply the law regarding the law enforcement personnel "defense" to the facts of his case. This claim is meritless because an application paragraph need not include an instruction negating defenses. *Hafley v. State*, 781 S.W.2d 642, 646 (Tex. App.-- Dallas 1989, no pet.) (application paragraph need not negate the security officer defense).

18

Furthermore, assuming there was error in the jury charge, it was harmless. Since appellant failed to object to the jury charge on the grounds stated in this point of error (RR IV 127-138), reversal is required only if appellant was egregiously harmed. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (opin. on reh'g); *Freeman v. State*, 413 S.W.3d 198, 209 (Tex. App.-- Houston [1st Dist.] 2013, pet. ref'd). An egregious harm analysis considers: (1) the entire jury charge; (2) the state of the evidence including the contested issues and the weight of the probative evidence; (3) the arguments of the parties; and (4) any other relevant information revealed by the record of the trial as a whole. *Id.* Jury charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory. *Id.* Egregious harm is a difficult standard to prove. *Taylor v. State*, 332 S.W.3d 483, 489 (Tex. Crim. App. 2011).

Regarding the first factor, a review of the entire jury charge indicates any error did not result in egregious harm. Although the "law enforcement personnel" issue is not presented in the application paragraph, it is explained in detail in the abstract section of the jury charge. (CR I 491). A proper recitation of the law in the abstract section of the charge minimizes error in the application paragraph. *Nava v. State*, 415 S.W.3d 289, 298 n.21 (Tex. Crim. App. 2013).

Furthermore, the application paragraph does instruct the jurors to find appellant guilty only if he "unlawfully" acted as a guard without a license. (CR I 493). Therefore, having been informed in the abstract section of the charge that a person acting as a guard who meets the "law enforcement personnel" criteria does not act unlawfully, the jurors effectively were instructed to find appellant not guilty if he satisfied the "law enforcement personnel" factors. As such, a review of the entire charge indicates appellant was not egregiously harmed by any error.

The second factor considers the state of the evidence. In determining whether egregious harm occurred with regard to an error relating to a defensive issue, it is appropriate to consider the plausibility of the evidence raising the defense. *Villarreal v. State*, 453 S.W.3d 429, 436 (Tex. Crim. App. 2015). The evidence supporting appellant's defensive theory under the "law enforcement personnel" statute was weak.

To qualify for a defense/exception under this statute, appellant was required to establish that he: (1) worked as a peace officer at least 32 hours per week on average; (2) was compensated by a rate equal to minimum wage at least; and (3) he was entitled to all employee benefits offered to a peace officer. TEX. OCC. CODE ANN. § 1702.322(1) (West 2012). The only witness to testify about these matters was Chad Pafford, the elected constable who gave appellant a job. (RR VI 75).

Pafford testified that appellant worked more than 32 hours per week on average. (RR VI 89). On cross-examination, however, he admitted that he had no paperwork to support this claim and that no such documentation ever existed, despite the fact that he claimed appellant was a full-time officer for 23 months. (RR VI 87, 105-106). Pafford stated that appellant worked this supposed 32-hour work week on "the honor system" for this extended length of time (RR VI 87, 105-106). The Liberty County Treasurer, Kim Harris, testified that appellant was never a paid employee of Liberty County. (RR V 97).

Regarding the minimum-wage requirement, Pafford admitted that appellant did not receive a paycheck despite working as a full-time officer for nearly two years. (RR VI 87, 101). Pafford explained that appellant's only compensation was the use of a "take-home patrol car" and the use of unspecified "county equipment." (RR VI 101). He considered the value of the use of these items to be more than minimum wage. (RR VI 109). The car was a 2000 Ford Crown Victoria with about 260,000 miles on it. (RR VI 109-110). Even though Pafford considered appellant's use of the car and county equipment as compensation, he did not report this compensation to the Liberty County Tax Assessor, the IRS, or any other taxing authority. (RR VI 122-123).

Regarding the benefits requirement, Pafford testified he did not know if appellant was entitled to all the benefits offered by Liberty County. (RR VI 110).

He "believe[d]" appellant received workmen's compensation benefits. (RR VI 117). The Liberty County Treasurer, Kimberly Harris, stated that county employees, including law enforcement personnel, are offered various county benefits. (RR V 88). Her office maintains files for workmen's compensation benefits for all county employees. (RR V 89). There was no record of appellant receiving any benefits. (RR V 97).

Appellant's evidence relating to the three requirements under the "law enforcement personnel" statute was very weak. First, it is unlikely the jury would have believed Pafford's claim that appellant worked 32 hours per week on average since Pafford did not have appellant document his time worked in any manner whatsoever. Furthermore, he apparently did not attempt to verify appellant's work hours by any non-document method either since he relied simply on "the honor system." By relying on the honor system, it appears that Pafford did not have actual knowledge of the amount of hours worked by appellant.

Regarding the second factor, there is no evidence that appellant was paid at least minimum wage. Minimum wage is $7.25. 29 U.S.C. § 206(a)(1)(C). So, at minimum wage, working 32 hours per week for a month would yield a pay of about $928 (7.25 x 32 (hours) x 4 (weeks)). There was absolutely no evidence that the value of the monthly use of the aged and high-mileage vehicle provided to appellant was anywhere near $928. Similarly, there was no evidence indicating

appellant's use of other county equipment or the value of such. Under these circumstances, the jury had no plausible ground for finding that appellant was paid at least minimum wage. Any doubts about the value of appellant's compensation were exacerbated by the fact that Pafford did not report appellant's compensation to any taxing authority.

Regarding the third requirement, Pafford testified he did not know if appellant was entitled to all the benefits offered by Liberty County. (RR VI 110). And his belief that appellant received workmen's compensation benefits was contradicted by Harris and her knowledge of the Liberty County personnel files.

Given this state of the evidence, it is very doubtful the jury would have found that appellant satisfied all three requirements under the "law enforcement personnel" statute. Furthermore, the jury was unlikely to find appellant was a full-time officer (as required under section 1702.322) since, at the time of his arrest at the Lopez construction site, he possessed an unexpired identification card that identified him as a *reserve* officer for the Liberty County Constable. (RR V 187-188). The state of the evidence, therefore, demonstrates that any error relating to the submission of the "law enforcement personnel" did not result in egregious harm.

The third factor used to determine whether egregious harm occurred as a result of jury charge error considers the parties' arguments. The record reflects that

both parties addressed the three criteria found in the "law enforcement personnel" statute and applied that statutory law to the facts of the case. (RR VII 8-9, 21-26). As such, the jury received information applying the law to the facts despite any error in the jury charge's application paragraph.

Accordingly, these three factors show that appellant was not egregiously harmed by any error in the jury charge. Point of error four is meritless and should be overruled.

# CONCLUSION

It is respectfully submitted that all things are regular and the conviction should be affirmed.

<div style="margin-left: 50%;">

**DEVON ANDERSON**
District Attorney
Harris County, Texas

/s/ Dan McCrory
**DAN McCRORY**
Assistant District Attorney
Harris County, Texas
1201 Franklin, Suite 600
Houston, Texas  77002
(713) 755-5826
TBC No. 13489950
mccrory_daniel@dao.hctx.net

</div>

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing instrument has been sent to the

following email address via TexFile:

Renato Santos, Jr.
Attorney at Law
Renato.santos3@att.net


/s/ Dan McCrory
**DAN McCRORY**
Assistant District Attorney
Harris County, Texas
1201 Franklin, Suite 600
Houston, Texas  77002
(713) 755-5826
TBC No. 13489950


## CERTIFICATE OF COMPLIANCE

The undersigned attorney certifies that this computer-generated document
has a word count of 5,318 words, based upon the representation provided by the
word processing program that was used to create the document.


/s/ Dan McCrory
**DAN McCRORY**
Assistant District Attorney
Harris County, Texas
1201 Franklin, Suite 600
Houston, Texas  77002
(713) 755-5826
TBC No. 13489950

Date: 4/24/2015